**INDUSTRIAL CLAIM APPEALS OFFICE, Southland Corporation, and Kemper National Insurance Companies, Petitioners,**

v.

**Lyndall K. ORTH, f/k/a Lyndall Moon, Respondent.**

**No. 97SC671.**

Supreme Court of Colorado.

Sept. 14, 1998.

Rehearing Denied Oct. 19, 1998.

---

**1248**

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, David M. Kaye, First Assistant Attorney General, John D. Baird, Assistant Attorney General, State Services Section, Denver, for Petitioner Industrial Claim Appeals Office.

White & Steele, P.C., Robert H. Coate, Janice M. Greening, Ali J. Farhang, Denver, for Petitioners Southland Corp. and Kemper National Insurance Co.

Steven U. Mullens, P.C., Steven U. Mullens, Colorado Springs, Wilcox & Ogden, P.C., Ralph Ogden, Denver, for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

This workers' compensation action concerns the scope of authority granted to a Prehearing Administrative Law Judge ("PALJ") by the Workers' Compensation Act. *See* §§ 8–40–201 to 8–47–203, 3 C.R.S. (1997). We granted certiorari to determine whether a PALJ may approve a settlement agreement that purports to close a workers' compensation case pursuant to section 8–43–204, 3 C.R.S. (1997), and whether such approval is a final order subject to review.[1] We hold that a PALJ possesses jurisdiction to approve a workers' compensation settlement agreement, and that such approval is final for purposes of review. Therefore, we reverse the judgment of the court of appeals in *Orth v. Industrial Claim Appeals Office,* 942 P.2d 1368 (Colo.App.1997), and remand the case with directions to reinstate the order of the Industrial Claim Appeals Office.

I.

Lyndall Orth suffered a compensable injury to her right arm during the course of her employment with the Southland Corporation in January of 1991. A Final Admission of Liability was filed by Southland and its insurer, Kemper National Insurance Company ("Kemper"), on December 20, 1993. Orth petitioned to reopen her claim, in July of 1996, based upon a change in her physical condition. A conference was held in October of that year before a PALJ to discuss settle-

---

1. Our order granting certiorari set forth the following issues:
 [1] Whether orders of prehearing administrative law judges approving workers' compensation settlement agreements pursuant to §§ 8–43–207.5, 3B C.R.S. (1996 Supp.), and 8–43–204, 3B C.R.S. (1986 & 1996 Supp.), are final orders subject only to standards governing the reopening of claims pursuant to § 8–43–303, 3B C.R.S. (1986 & 1996 Supp.).
 [2] Whether the court of appeals erred by failing to decide whether Prehearing Administrative Law Judge James Klein had jurisdiction pursuant to § 8–43–207.5 to approve a *pro se* workers' compensation settlement agreement.

 [3] Whether the court of appeals erred in deciding that a Division of Administrative Hearings Judge had authority to determine at hearing pursuant to § 8–43–207, 3B C.R.S. (1986 & 1996 Supp.) whether a Division of Workers' Compensation Prehearing Judge exceeded his jurisdiction.
 [4] Whether the court of appeals erred by creating a new remedy to set aside workers' compensation settlement agreements, despite the fact that the legislature has already enacted such a remedy in § 8–43–303.

ment of Orth's claim. Attorneys for Southland and Kemper were present in the PALJ's office. Orth, who was acting *pro se,* participated via telephone.

A settlement agreement was reached by the parties in which Orth agreed to accept $1500 in consideration for her waiver of all rights to further benefits. As part of this waiver, Orth agreed to relinquish forever the right to petition to reopen her claim, except on the grounds of fraud or mutual mistake of material fact. The settlement agreement also provided that "[t]he Claimant agrees that she will never be able to receive any additional money or benefits even ... if Claimant later feels she made a mistake or error in settling this claim," and "Claimant is agreeing to this Final Settlement of her own free will, without force, pressure or coercion by anyone."

The PALJ approved the settlement agreement on October 21, 1996. The PALJ found that Orth had read and signed the settlement agreement, and that she was aware of the benefits which may have been available to her under the Workers' Compensation Act (the "Act").

Orth subsequently claimed that the PALJ acted in excess of his authority when he approved the settlement agreement. These allegations were made in a Petition to Review the order of the PALJ, filed on November 12, 1996 through newly retained counsel. Specifically, Orth asserted that: (1) the settlement agreement was contrary to her interests and adverse to her medical rights; (2) she was not adequately advised of the rights she waived in the agreement; (3) the PALJ erred by failing to make a record of the settlement proceedings; (4) the PALJ erred by advocating the interests of the employers and by persuading Orth to enter into the agreement when he knew that she was not represented by counsel; and (5) therefore, the agreement may have been "unconscionable or premature." By requesting that the PALJ's order be set aside, Orth sought to

nullify the legal significance of the settlement agreement and to allow her claim to remain open.[2]

The Industrial Claim Appeals Office (the "ICAO") affirmed the PALJ's order. First, the ICAO assumed *arguendo* that an order approving a settlement is reviewable rather than interlocutory. Second, the ICAO determined that, because a PALJ has authority to approve a settlement under section 8–43–207.5, 3 C.R.S. (1997),[3] the PALJ did not act in excess of his authority. Third, the ICAO found that the PALJ was under no statutory obligation to make a record of the settlement proceedings, especially in light of the fact that Orth never requested that there be such a record. Finally, the ICAO afforded the PALJ a "presumption of integrity and impartiality" in the conduct of his duties, and found that the PALJ did not abuse his discretion in approving the settlement. The ICAO also found that the order was not "beyond the bounds of reason," nor was it unsupported by the law or the evidence.

Orth appealed the ICAO's order to the court of appeals. Rather than reach the issues raised by Orth, however, the court of appeals held that the PALJ's order was not appealable. *See Orth,* 942 P.2d at 1369. The court noted that a party to a workers' compensation case may not petition for administrative or judicial review of an interlocutory order, and found that section 8–43–207.5 renders all orders issued by a PALJ interlocutory. *See id.* The court reasoned that "[w]hile it may appear to be a misnomer to refer to an order approving a settlement as interlocutory," the PALJ's order was not subject to review. *Id.*

Additionally, the court held that "insofar as claimant's assertion that the PALJ exceeded his authority may raise jurisdictional questions, as distinct from a claim of fraud or mutual mistake of fact, those issues may properly be determined in a hearing before an [administrative law judge] pursuant to

---

2. Orth simultaneously filed an application for a hearing before an administrative law judge in the Division of Administrative Hearings. Orth requested a hearing on the same issues cited in the Petition to Review, and sought to have the PALJ's order set aside for the same reasons.

3. Because the relevant language of the Act has not been amended during the time period pertinent to our analysis, we refer to the 1997 version of the Act in this opinion.

§ 8–43–207." *Id.* (citations omitted). Accordingly, the court set aside the ICAO's order and remanded with instructions to dismiss Orth's Petition to Review without prejudice. *See id.* at 1370.

The ICAO, Southland and Kemper (collectively, the "Petitioners") sought certiorari review in this court. The Petitioners contend: (1) a PALJ possesses jurisdiction to approve a settlement; (2) a PALJ's order approving a settlement is a final order subject to review; and (3) by allowing Orth to challenge a PALJ's jurisdiction to approve settlements in a hearing before an administrative law judge ("ALJ"), the court of appeals created a procedure for setting aside settlements which is not permitted by the Act.

## II.

■ We first address the authority of a PALJ to approve a settlement agreement.

### A.

The Act has permitted settlements of workers' compensation claims since at least 1919. *See Industrial Comm'n v. London Guar. & Accident Co.*, 66 Colo. 575, 578–79, 185 P. 344, 345 (1919). Currently, the settlement provisions are codified at section 8–43–204, enacted in 1990. *See* ch. 62, sec. 1, § 8–43–204, 1990 Colo. Sess. Laws 468, 502. Section 8–43–204 provides that "[a]n injured employee may settle all or part of any claim for compensation, benefits, penalties, or interest." Section 8–43–204 also states that "[t]he settlement shall be reviewed in person with the injured employee and approved in writing by an administrative law judge or the director of the division prior to the finalization of the settlement." Thus, the settlement itself does not conclude the case; rather, the approval of the settlement by the director or an ALJ is required. *See Padilla v. Industrial Comm'n*, 696 P.2d 273, 279 (Colo.1985); *City Market, Inc. v. Industrial Claim Ap-*

*peals Office*, 800 P.2d 1335, 1337 (Colo.App. 1990).

Whether a PALJ, in lieu of the director or an ALJ, may approve a settlement is not addressed in section 8–43–204. A description of a PALJ and the scope of a PALJ's authority is found in section 8–43–207.5. This provision, enacted by the General Assembly in 1994, is entitled "Prehearing conferences." *See* ch. 309, sec. 6, § 8–43–207.5, 1994 Colo. Sess. Laws 1873, 1876. A PALJ is defined in section 8–43–207.5(2) as a person appointed by the director to approve settlements and to conduct prehearing conferences, settlement conferences and arbitrations:

> "Prehearing administrative law judge" means a qualified person appointed by the director pursuant to section 8–47–101 to preside over prehearing conferences pursuant to this section, *to approve settlements pursuant to section 8–43–204*, to conduct settlement conferences pursuant to section 8–43–206, and to conduct arbitrations pursuant to section 8–43–206.5.

(Emphasis added.)[4] Thus, section 8–43–207.5(2) explicitly grants a PALJ the authority to approve settlements in the manner prescribed by section 8–43–204. Accordingly, section 8–43–207.5(2) adds a PALJ to the list of officers empowered by section 8–43–204 to enter orders approving settlements.

### B.

Despite the explicit grant of authority to approve settlements found in section 8–43–207.5, Orth presents two arguments to support her view that a PALJ does not have the jurisdiction to approve settlements. First, Orth maintains that a PALJ is prevented from approving a settlement involving a *pro se* claimant by Rule XI(D) of the Workers' Compensation Rules of Procedure, Department of Labor and Employment. *See* 7 C.C.R. 1101–3, pp. 40–41. Secondly, Orth asserts that the language of the settlement agreement itself divests a PALJ of authority to approve the agreement because the agree-

---

4. A PALJ, therefore, is an officer named by the director of the Division of Workers' Compensation pursuant to the director's authority to "appoint such employees as are necessary to carry out the duties and exercise the powers conferred by law upon the division of workers' compensa-

tion and the director." § 8–47–101(1), 3 C.R.S. (1997). An ALJ is an officer of the Division of Administrative Hearings in the Department of Personnel appointed pursuant to section 24–30–1003, 7 C.R.S. (1997).

ment requires the approval of the Division of Administrative Hearings. We find both arguments unpersuasive.

The Workers' Compensation Rules of Procedure specifically address approval of a settlement agreement involving a *pro se* claimant. Rule XI(D)(2) provides that "[w]henever a *pro se* claimant requests approval of a settlement agreement, ... a settlement proceeding shall be scheduled." Rule XI(D)(3) states that "[a] settlement proceeding shall be scheduled in the Division of Administrative Hearings at least two days in advance." Orth asserts that, through Rule XI(D), the director of the Division of Workers' Compensation has delegated the authority to approve settlements involving *pro se* claimants to the Division of Administrative Hearings. According to Orth, because a PALJ is not an officer of the Division of Administrative Hearings, but of the Division of Workers' Compensation, a PALJ has no authority to approve settlements involving *pro se* claimants.

We do not agree that Rule XI(D) currently has the effect of requiring that an officer of the Division of Administrative Hearings approve a settlement involving a *pro se* claimant. Rule XI(D) was promulgated before the 1994 adoption of section 8–43–207.5, which explicitly grants a PALJ authority to approve settlements. In section 8–43–207.5, the General Assembly expressly conferred upon a PALJ the jurisdiction to approve settlements, irrespective of a claimant's *pro se* status. The effect of this legislation cannot be contravened by a rule promulgated by the administrative agency before the legislation was enacted. *See Miller Int'l, Inc. v. State of Colorado*, 646 P.2d 341, 344 (Colo. 1982) (holding that a regulation must further the will of the legislature and may not modify or contravene an existing statute).

Furthermore, we note that Rule XI(D) calls for a settlement proceeding before a hearing officer whenever a *pro se* claimant

seeks to settle his or her claim. A claimant is afforded the opportunity to ask questions and be advised of his or her rights under the Act regardless of whether the proceeding is held before an ALJ or a PALJ. Moreover, neither the Division of Administrative Hearings nor the Division of Workers' Compensation is a party to the settlement agreement; the officers of both divisions can be expected to afford an impartial settlement procedure. Hence, where a PALJ approves a settlement after reviewing the agreement with the claimant, the purposes of Rule XI(D) appear to be served. Accordingly, we hold Rule XI(D), as presently constituted, does not inhibit a PALJ's jurisdiction to approve a settlement agreement involving a *pro se* claimant.

■ Orth's second argument against the PALJ's authority to approve the settlement in this case is founded in the text of the agreement itself. Paragraph nine of the settlement agreement provides, in part, that "this Final Settlement is not binding unless signed by all the parties and approved by a representative of the Division of Administrative Hearings." Orth maintains that, because the settlement was approved by the PALJ only, and because the PALJ is not a representative of the Division of Administrative Hearings, the settlement is not binding.

Paragraph nine of this agreement appears to conflict with the sections of the Act that allow the Division of Workers' Compensation to approve a settlement agreement. *See* § 8–43–204; § 8–43–207.5. By stripping the Division of Workers' Compensation of the authority to finalize a settlement agreement, paragraph nine may frustrate the General Assembly's intent to permit the Division to approve a settlement agreement. Whether parties may contract to limit the jurisdiction of the Division of Workers' Compensation is debatable.[5] However, we do not reach this issue because we find that the settlement agreement is ambiguous as to its approval requirements. While paragraph nine of the

---

**5.** In *University of Denver v. Industrial Commission*, 138 Colo. 505, 509, 335 P.2d 292, 294 (1959), we explained:

[P]arties cannot by private contract abrogate statutory requirements or conditions affecting the public policy of the state. In the case at

bar, as in every other agreement permitted under the Workmen's Compensation Statute, the applicable part of the law is an inherent part of any contract between employer and employee whether mentioned or known, and *a fortiori* modifies it where in conflict therewith.

agreement prescribes approval by the Division of Administrative Hearings, the signature block of the agreement calls for the approval of the Division of Workers' Compensation. Thus, the agreement reflects confusion or indifference as to which division should approve the settlement. Because review by either an ALJ or a PALJ protects the interests of the parties (as explained above), and because the Act allows approval by either division, we conclude that the settlement agreement contemplates approval by either division. Therefore, the settlement was binding on the parties once approved by the PALJ.

For the foregoing reasons, we hold that a PALJ has jurisdiction to enter an order approving a settlement agreement in a workers' compensation case.

### III.

■ We now turn to the issue of whether the order of a PALJ approving a settlement is final for purposes of review.

### A.

The court of appeals held that the PALJ's order approving the settlement agreement is not subject to review because the Act renders all orders entered by a PALJ interlocutory. *See Orth,* 942 P.2d at 1369. In support of this holding, the court relied exclusively upon the language of subsections (2) and (3) of section 8–43–207.5. *See id.*

After defining a PALJ as discussed in Part II.A of this opinion, subsection (2) provides for the authority of the PALJ to perform several prehearing functions:

> Such prehearing administrative law judges shall have authority to: Order any party to participate in a prehearing conference; issue interlocutory orders; issue subpoenas in the name of the division for production of documentary evidence which shall be served in the same manner as subpoenas in the district court; make evidentiary rulings; permit parties to cause depositions to be taken; determine the competency of any party to claim to enter into a settlement agreement; and strike the applica-

tion for hearing of a party for failure to comply with any provision of this section. § 8–43–207.5(2). Subsection (3) provides, in relevant part, that a PALJ's orders are interlocutory: "An order entered by a prehearing administrative law judge shall be an order of the director and binding on the parties. Such an order shall be interlocutory." § 8–43–207.5(3). The court of appeals interpreted this language to mean that all orders of a PALJ are interlocutory and not final for purposes of review.

The court of appeals erred in construing section 8–43–207.5 to render a PALJ's order approving a settlement interlocutory and not final for purposes of review. The history and purposes of the Act in general, and of section 8–43–207.5 in particular, confirm that the General Assembly intended the PALJ's prehearing orders to be interlocutory and the PALJ's approval of a settlement to be a final order for purposes of review.

### B.

■ In interpreting a statute, a reviewing court must determine and effect the intent of the legislature. *See Weld County Sch. Dist. RE–12 v. Bymer,* 955 P.2d 550, 554 (Colo.1998). In doing so, a court should afford the language of the statute its plain and ordinary meaning. *See Christie v. Coors Transp. Co.,* 933 P.2d 1330, 1332 (Colo.1997). Where the statutory language is ambiguous, a court may explore various sources of legislative intent, including " 'the object that the legislature sought to obtain by its enactment, the circumstances under which it was adopted, and the consequences of a particular construction.' " *Bymer,* 955 P.2d at 554 (quoting *State Eng'r v. Castle Meadows, Inc.,* 856 P.2d 496, 504 (Colo.1993)). Furthermore, because it is presumed that the legislature intended the statute to have just and reasonable effects, a court must construe and apply the statute so as to ensure such results. *See* § 2–4–201(1)(c), 1 C.R.S. (1997); *Woodsmall v. Regional Transp. Dist.,* 800 P.2d 63, 67 (Colo.1990).

■ The court of appeals implicitly held that the use of the term "interlocutory" in section 8–43–207.5 indicates an unambiguous

legislative intent to treat all orders of a PALJ as something other than an appealable final judgment. However, we have recently recognized that the General Assembly does not consider "final judgment" and "interlocutory order" to be mutually exclusive terms. *See People v. Gallegos,* 946 P.2d 946, 952 (Colo.1997); *see also* § 24–10–108, 7 C.R.S. (1997) (stating that a court's decision as to a public entity's sovereign immunity "shall be a final judgment and shall be subject to interlocutory appeal"). Consequently, a statute's description of an order as "interlocutory" is ambiguous and does not necessarily preclude an immediate appeal of the order as a final judgment.

The meaning of "interlocutory" in section 8–43–207.5 is not clarified by language surrounding the term. Nor is the surrounding language of any assistance in determining whether "such an order shall be interlocutory" is a reference to *all* orders of a PALJ or only to those relating to the described prehearing functions. § 8–43–207.5(3). Thus, it is not clear from the statute whether and when a PALJ's order is subject to appeal. We find it appropriate, therefore, to look to relevant sources of legislative intent with respect to an order of a PALJ. We pay particular attention to those sources of legislative intent which concern an order approving a settlement agreement.

Initially, it is important to recall the source of a PALJ's jurisdiction to enter an order approving a settlement. As discussed in Part II of this opinion, a PALJ is authorized to approve settlements by section 8–43–207.5. *See* § 8–43–207.5(2). Section 8–43–207.5(2) directs a PALJ to approve a settlement as provided in section 8–43–204. Hence, absent clear evidence of a contrary legislative intent, it is reasonable to treat a PALJ's order approving a settlement pursuant to section 8–43–204 the same as any other order approving a settlement under section 8–43–204.

█ In general, an order approving the settlement of a claim is equivalent to an award. *See Padilla,* 696 P.2d at 279; *Har-*

*lan v. Industrial Comm'n,* 167 Colo. 413, 418, 447 P.2d 1009, 1011–12 (1968); *Brofman v. Industrial Comm'n,* 117 Colo. 248, 251, 186 P.2d 584, 586 (1947). An award is a final order subject to the review provisions of the Act. *See* 8–43–301(2), 3 C.R.S. (1997) ("any party dissatisfied with an order which requires any party to pay a penalty or benefits . . . may file a petition to review"). Thus, an order approving a settlement under section 8–43–204 is also a final order.

Accordingly, a PALJ's order approving a settlement is final unless we discern legislative intent to the contrary. And we discover none.

The General Assembly enacted section 8–43–207.5 as part of Senate Bill 94–193. *See* ch. 309, sec. 6, § 8–43–207.5, 1994 Colo. Sess. Laws 1873, 1876. In Senate Bill 94–193, the General Assembly also repealed certain provisions of section 8–43–202, 3B C.R.S. (1986). *See* ch. 309, sec. 2, § 8–43–202, 1994 Colo. Sess. Laws 1873, 1874. The repealed language gave the director the authority to refer any case to a "special administrative law judge" for the purpose of taking evidence to be used in making the findings and award of the director. *Id.* The legislative history of Senate Bill 94–193 indicates that section 8–43–207.5 was added to ensure that the director retained the authority to appoint officers to perform these prehearing evidentiary duties. *See* Hearing on S. 94–193 Before the Senate Committee on Business Affairs & Labor, 59th Gen. Assembly, 2nd Reg. Sess. (Mar. 30, 1994); Hearing on S. 94–193 Before the House Committee on Business Affairs & Labor, 59th Gen. Assembly, 2nd Reg. Sess. (May 2, 1994).

Moreover, the legislative history of Senate Bill 94–193 reveals that the General Assembly provided for prehearing conferences and PALJs in order to reduce the case loads of the ALJs. *See* House Journal, 59th Gen. Assembly, 2nd Reg. Sess., Vol. 2 at 1723 (May 5, 1994).[6] Thus, the primary purpose of section 8–43–207.5 was to continue and clearly define the prehearing conference. *See id.*

---

6. This same concern led the General Assembly to amend section 8–43–206 to allow a settlement conference to be conducted by a PALJ as well as an ALJ. *See* House Journal, 59th Gen. Assembly,

2nd Reg. Sess., Vol. 2 at 1723 (May 5, 1994); ch. 309, sec. 4, § 8–43–206, 1994 Colo. Sess. Laws 1873, 1875.

This explains the title of section 8–43–207.5 ("Prehearing conferences") and explains why a PALJ is so named.

It follows, therefore, that the great majority of section 8–43–207.5 is devoted to describing the subject matter and procedure of a prehearing conference. Subsection (1) lists who may request a conference and outlines the issues to be addressed. *See* § 8–43–207.5(1). Subsection (2), in addition to defining a PALJ, details the PALJ's authority to conduct a prehearing conference. *See* § 8–43–207.5(2). Subsection (3) describes the nature and effect of a PALJ's order, and notes that a prehearing conference need not be held on the record. *See* § 8–43–207.5(3).

 In determining the General Assembly's intent in using the term "interlocutory" in section 8–43–207.5, we are guided by the legislative history discussed above, as well as the rules of statutory construction. To reiterate, these rules require us to construe the statute so as to ensure reasonable results, and to consider the statute "as a whole in order to give consistent, harmonious, and sensible effect to all of its parts." *Rodriguez v.. Schutt,* 914 P.2d 921, 925 (Colo.1996); *see* § 2–4–201. Furthermore, in construing different statutory provisions concerning the same topic, we must give effect to the legislative purpose of all such provisions. *See Senior Corp. v. Board of Assessment Appeals,* 702 P.2d 732, 742 (Colo.1985). Thus, we should avoid a construction that renders any such provision superfluous or a nullity. *See id.*

We conclude that the General Assembly intended that the orders of a PALJ that relate to prehearing conferences are not final for purposes of appeal. This construction of the statute comports with the legislative history of section 8–43–207.5 by acknowledging that the primary purpose of the section relates to prehearing conferences. This construction recognizes that the General Assembly has not clearly expressed an intent to treat a PALJ's order under section 8–43–204 differently from any other order entered pursuant to section 8–43–204. Indeed, by treating a PALJ's order approving a settlement

as final, this view of the statute gives full effect to the General Assembly's intent to authorize a PALJ to approve settlements pursuant to section 8–43–204.

Additionally, this construction is reasonable in the context of the Act as a whole, and harmonizes sections 8–43–207.5 and 8–43–204. To illustrate, it makes sense to treat a PALJ's order relating to a prehearing conference as interlocutory (i.e., not immediately appealable) because a prehearing conference, by definition, is followed by a full hearing before the director or an ALJ. *See* 8–43–207.5(1) (any party may request a prehearing conference "at any time not less than ten days prior to the formal adjudication on the record of any issue before the director or an [ALJ]"). Thus, the propriety of a PALJ's prehearing order may be addressed at the subsequent hearing. In contrast, an order approving a settlement pursuant to section 8–43–204 concludes the case, subject only to the Act's review and reopening provisions. *See* §§ 8–43–301 to –308, 3 C.R.S. (1997).

Furthermore, treating a PALJ's order approving a settlement as final comports with the General Assembly's goal of reducing the work load of the ALJs. *See also* § 8–40–102(1), 3 C.R.S. (1997) (General Assembly intends the Act to "be interpreted so as to assure the quick and efficient delivery of disability and medical benefits"). If such an order were merely interlocutory, an ALJ or the director would be required to review and approve the settlement before a final judgment was entered in the case. This repetitive procedure would do little to lighten the load of the ALJs.

 Finally, we traditionally give deference to the interpretation of a statute adopted by the officer or agency charged with its administration. *See Bymer,* 955 P.2d at 557. In this regard, we note that the ICAO interprets section 8–43–207.5 as authorizing a PALJ to enter a final order approving a settlement agreement.[7] Consequently, we hold that the PALJ's order approving the settlement in this case is a final order subject to the review provisions of the Act.

---

7. We also note that, in addition to the ICAO, all of the parties to this case, including Orth, agree that a PALJ's order approving a settlement agreement is a final judgment.

## IV.

Having determined that the PALJ's order approving the settlement in this case is a final order, we now consider the remaining questions in the proper procedural context.

### A.

 In the instant case, Orth petitioned the ICAO for review of the PALJ's order. When acting upon such a petition, the ICAO's review is conducted pursuant to the factors described in section 8–43–301(8), 3 C.R.S (1997). These factors include whether the findings of fact are supported by the evidence, whether the findings of fact support the order, and whether the award is supported by applicable law. *See* § 8–43–301(8); *see also Coates, Reid & Waldron v. Vigil*, 856 P.2d 850, 856 (Colo.1993) (review of an ALJ's order involves an abuse of discretion standard which investigates whether the order is supported by applicable law and is within "the bounds of reason"). Applying these principles, the ICAO upheld and adopted the PALJ's findings that (1) Orth had read and signed the settlement agreement and (2) she was aware of the benefits she was waiving by signing the agreement.

Our review of the ICAO's order is conducted pursuant to section 8–43–308, and is substantially similar to the review described by section 8–43–301(8). *See* § 8–43–308, 3 C.R.S (1997). We may not set aside an order if the order is supported by substantial evidence. *See id.; Bymer*, 955 P.2d at 558.

 Where, as here, the ICAO adopts the findings of the PALJ, we will defer to the PALJ's resolution of conflicts in the evidence, credibility determinations, and plausible inferences drawn from the evidence. *See Bymer*, 955 P.2d at 558. Therefore, even where the record contains conflicting evidence that may support contrary findings, we will not disturb the ICAO's findings if supported by the record. *See id.*

The record in this case demonstrates, and Orth admits, that the PALJ reviewed the terms of the settlement agreement with Orth before she signed it. Thus, the ICAO's conclusion that Orth understood the consequences of the agreement finds adequate support in the record. In addition, we agree with the ICAO that the PALJ's order is supported by applicable law. *See* discussion *supra* Part II. As a consequence, we may not set aside the ICAO's order on appeal.

### B.

We next address both the court of appeals' holding that Orth may raise jurisdictional questions on remand and Orth's argument that the PALJ persuaded her to settle her claims and failed to discuss the agreement with her "in person."

The court of appeals remanded this case for a determination of whether Orth may raise "jurisdictional questions, as distinct from a claim of fraud or mutual mistake of fact," regarding the PALJ's authority to act in this case. *Orth*, 942 P.2d at 1369. The court held that Orth could raise these questions in a hearing before an ALJ pursuant to section 8–43–207, 3 C.R.S. (1997). *See Orth*, 942 P.2d at 1369. However, to the extent that Orth's claims are based on the theory that a PALJ generally lacks jurisdiction to approve her settlement agreement, a hearing before an ALJ is unnecessary and inappropriate. As discussed herein, the Act does confer this jurisdiction upon a PALJ.[8]

 Furthermore, the ICAO's order approving the settlement agreement effectively closed Orth's case. *See Padilla*, 696 P.2d at 279 (stating that an order approving a settlement concludes the case). Thus, any further action in this case must conform to the reopening provisions of section 8–43–303, 3 C.R.S. (1997). Section 8–43–303 provides that, where a case is closed pursuant to a settlement agreement in which the claimant waived all right to reopen the award, the case may be reopened only on the grounds of

---

8. Orth does not present any factual questions as to the PALJ's authority. *See Welch v. Industrial Comm'n*, 722 P.2d 439, 443 (Colo.App.1986) (remanding for a hearing to determine the employment status of the ALJ at the time he signed the challenged order). Rather, Orth's jurisdictional challenges involve questions of law: the proper interpretation of the Act and of the settlement agreement.

fraud or mutual mistake of material fact. *See* § 8–43–303(1). Orth has not filed a petition to reopen her claim, nor has she alleged fraud or mutual mistake in the proceedings below. Accordingly, there is no need to remand the present action for further hearings.

For similar reasons, we do not reach Orth's contention that the PALJ violated section 8–43–204 by failing to review the settlement agreement with her "in person." § 8–43–204. This contention, much like Orth's assertion that the PALJ improperly persuaded her to enter into the agreement, is relevant only in the context of proving fraud or mutual mistake pursuant to a petition to reopen the claim. Hence, the posture of this case precludes a remedy for these alleged violations.

For the reasons set forth above, we affirm the ICAO's order approving the settlement agreement in this case.

### V.

To summarize, we hold that a PALJ possesses the jurisdiction to approve a settlement agreement regardless of whether the claimant is acting *pro se.* We hold further that a PALJ's order approving a settlement agreement is final for purposes of review. Therefore, we reverse the judgment of the court of appeals, and remand the case with directions to reinstate the order of the ICAO.

Justice HOBBS dissents.

Justice HOBBS dissenting.

I respectfully dissent. I would affirm the judgment of the court of appeals that set aside the Industrial Claim Appeals Office (ICAO) order with directions for an Administrative Law Judge (ALJ) hearing, but my reasoning differs from that of the court of appeals.

I agree with the majority that the General Assembly has empowered Prehearing Administrative Law Judges (PALJ) to approve final settlement agreements, *see* §§ 8–43–204, 8–43–207.5(2), 3 C.R.S. (1997); when final, they are not interlocutory orders. However, the settlement agreement in this case contained a provision that made the settlement not binding unless approved by a hearing officer of the Division of Administration, an ALJ. Paragraph 9 of the settlement agreement recites that:

> The parties agree that this Final Settlement is not binding unless signed by all the parties and approved by a representative of the Division of Administrative Hearings. The parties agree that should the Division of Administrative Hearings refuse to approve this Final Settlement, the parties shall stand in the same position as if this final settlement had never been prepared, signed or submitted for approval by the Division of Administrative Hearings. Neither the Claimant nor the Respondent shall be deemed to have waived or relinquished any of the rights, claims, privileges, or defenses by having entered into this final settlement unless approved by the Division of Administrative Hearings as is requested in the final Order attached hereto.

Paragraph 11 of the settlement agreement recites that

> This Stipulation for Settlement and Final Release of All Claims contains the entire agreement between the parties, and *the terms herein are contractual* and not a mere recital.

(Emphasis added).

A settlement stipulation between parties is a contract, and we are bound to enforce the plain language of the agreement when its meaning is ascertainable. *See USI Properties East, Inc. v. Simpson,* 938 P.2d 168, 173 (Colo.1997). Stipulations to settle litigation are an important aspect of the administration of justice; they are enforceable according to their terms. *See United States v. Northern Colorado Water Conservancy Dist.,* 608 F.2d 422, 427 (10th Cir.1979).

The facts of this case are straightforward. The language of the settlement agreement is plain. The attorney for the Southland Corporation (Southland) and Kemper National Insurance Companies (Kemper) prepared the language of the stipulation and chose to include paragraphs 9 and 11. Orth signed the agreement in her *pro se* capacity. The PALJ approved the settlement agreement on October 21, 1996.

Orth then employed an attorney to review the agreement. On November 12, 1996, through her attorney, Orth requested that the agreement be set aside. An ALJ had not acted within those twenty-two days to approve the agreement. Under paragraph 9, the agreement was not binding until so approved. Thus, Orth was free to set aside the agreement and proceed with her claim.

The majority observes that the signature block of the settlement agreement calls for the approval of the Division of Workers' Compensation, *see* maj. op. at 1251–1252, thereby creating "confusion or indifference" as to which division should approve it. The majority then holds that the signature of the PALJ is sufficient to make the settlement agreement final and binding, despite the clear language of paragraph 9 to the contrary.

I do not view either the signature block or the PALJ's execution of the settlement agreement as creating confusion or indifference. Paragraph 9 is a material term of the agreement between the three parties-Orth, Southland, and Kemper-that the PALJ approved along with all the other terms of the contract. The majority correctly interprets the applicable statutes as providing ALJs and PALJs with settlement authority. Surely, the PALJ's settlement authority included approving an agreement whose terms provided that it would not be final and binding on the parties unless approved by an ALJ.

The majority's jurisdictional discussion, though correct, misses the point that the PALJ's jurisdiction was utilized here to approve a settlement agreement that recited it would not be binding unless "signed by all the parties and approved by a representative of the Division of Administrative Hearings." Apparently, the Division of Workers' Compensation had a standing policy, expressed by rule, that *pro se* claimants in specific contradistinction to represented claimants would have a settlement agreement reviewed and approved by an ALJ.[1] This salutary policy allowed *pro se* claimants to seek advice from counsel regarding the agreement after signing it but before it became binding. If the *pro se* claimant chose to proceed without counsel, or simply could not retain one, the ALJ would provide a review independent of the Division of Workers' Compensation.

Here, the claimant chose to retain counsel to review the settlement agreement and, upon advice of counsel, chose to proceed with her claim as if the settlement agreement never existed. She was entitled by the contract's plain language to do so, in the absence of ALJ approval, as were the other two parties to the agreement, Southland and Kemper.

The majority suggests that (1) the parties may have intended to improperly alter the jurisdiction of the PALJ, and, (2) the rules of the Division of Workers' Compensation regarding *pro se* agreements may be in conflict with the statute. However, the statute plainly directs the division to "adopt rules and regulations as may be necessary to implement the provisions of this section." § 8–43–207.5(4), 3 C.R.S. (1997). Section 8–43–207.5(2) empowers PALJs to "approve settlements pursuant to section 8–43–204." Section 8–43–204 provides that an "injured employee may settle all or any part of any

---

1. Rule XI(D)(2) of the Workers' Compensation Rules of Procedure, Department of Labor and Employment, stated that "[w]henever a *pro se* claimant requests approval of a settlement agreement, ... a settlement agreement shall be scheduled." Rule XI(D)(3) states that "[a] settlement proceeding shall be scheduled in the Division of Administrative Hearings at least two days in advance." Moreover, the Instructions for Filing Settlement Documents with the Division of Workers' Compensation stated:

**Claimant must be represented**
The Division of Workers' Compensation reviews and approves settlement documents only for claimants who are represented by an attorney. If the claimant is not represented, settle-

ment documents must be filed with the Division of Administrative Hearings .... If you have any questions about filing documents with the Division of Administrative Hearings, you may call (303) 764–1401.
I perceive no conflict between this rule of the agency practice and the legislature's grant of jurisdictional authority to a PALJ. The General Assembly did not prohibit PALJs from approving agreements that contained the paragraph 9 proviso for ALJ final approval. Rules adopted by an agency are presumed to be valid and will be set aside only when a challenging party establishes their invalidity beyond a reasonable doubt. *See Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.*, 919 P.2d 212, 217 (Colo.1996).

claim." This section does not dictate that settlements must include specified provisions, nor does it preclude a provision which allows for ALJ review and approval of PALJ-approved settlements. I see no reason why the rules of this agency could not contain a provision making *pro se* settlement agreements subject to the further review of an ALJ.

Section 8–43–204 does state that, *if* a settlement agreement contains a non-reopener provision, then the agreement may not be reopened except for "fraud or mutual mistake of fact."

> If such settlement provides by its terms that the employee's claim or award shall not be reopened, such settlement shall not be subject to being reopened under any provisions of articles 40 to 47 of this title other than on the ground of fraud or mutual mistake of material fact.

§ 8–43–204, 3 C.R.S. (1997).

Paragraph 5.e.[2] of the settlement agreement in this case is such a non-reopener provision. However, under paragraph 9 of the settlement agreement, this provision did not become effective until the entire agreement was approved by an ALJ. Orth sought an ALJ hearing, but the ICAO ruled that the settlement agreement was final and should be enforced. Instead, it should have allowed the ALJ hearing on the compensation claim to proceed.

Thus, while I agree with the majority's jurisdictional analysis, and with the proposition that PALJs now have the power to approve final settlement agreements, the agreement in this case simply was not binding because the contract required an additional step to make it final. This step, approval by the ALJ, never occurred. I would enforce paragraph 9 and hold that Orth is entitled to proceed with her compensation claim before an ALJ and that all parties to the agreement are restored to their rights and remedies as provided by the contract.

The court of appeals correctly reversed the ICAO order with directions for an ALJ hear-

ing. I would affirm its judgment based on the foregoing reasons.

Accordingly, I respectfully dissent.

---

**2.** Paragraph 5.e. recites:
> The Claimant stipulates and agrees that this claim will never be reopened under the provi-

sions of Section 8–43–303, C.R.S., except on the grounds of fraud or mutual mistake of material fact.